IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ANTHONY D HENDERSON,

       Petitioner,

v.                             CASE NO. 5:16-cv-23-WTH-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

       Respondent.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Petitioner initiated this case by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  The Respondent has filed a response to the Petition, ECF No. 14, and Petitioner has filed a reply, ECF No. 16.  Upon due consideration of the Petition, the response, the state-court record, and the reply, the undersigned recommends that the Petition be denied.[1]

## I.  <u>Facts and Procedural History</u>

The Petition stems from Petitioner's Jackson County jury-trial convictions of burglary with battery, kidnaping, grand theft auto, and

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

robbery, for which he is serving consecutive sentences of life, life, 15 years, and five years, respectively.  ECF No. 1.

The evidence adduced at trial may be summarized as follows.  Prior to opening statements one of the jurors, Oscar D. Forrester, informed the court that he recognized a witness in the case, Trinity Cobart, because she was Forrester's ex-wife's sister-in-law by marriage.  Forrester had not taken notice of the connection when potential witnesses were identified during *voir dire*.  The court asked Forrester if his knowledge of the witness would prevent him from being a fair and impartial juror, and Forrester replied "no."  Petitioner's counsel, Christopher Patterson, then asked Forrester how frequently during his relationship with his ex-wife he had seen Cobart.  Forrester responded that it might have been on two occasions, including one occasion when Forrester was helping his ex-wife move and Cobart assisted them.  Forrester affirmed that he could give Cobart's testimony no more or no less weight than another witness, and that he could be fair and impartial both to the defense and the State. Patterson then agreed that the juror was acceptable and stated that "[m]y client indicates that's fine."  ECF No. 14-1 at 177-79.

The victim, Emma Joiner, testified that on the night of the burglary

(July 22, 1999) she was alone in the kitchen of her Marianna home preparing tomatoes for canning.  Joiner's home is next door to Trinity Baptist Church near a shopping plaza with a Dollar General store.  At around 10:15 p.m., two men threw a cement block through her sliding glass door, came into the kitchen, and pushed her down a hall and into her bedroom.  The men duct taped her hands and feet.  One of the men discovered a safe inside Joiner's nightstand.  He demanded the combination to the lock, but Joiner was too frightened to remember it.  The man said "you will or I'll kill you."  Joiner told the man where the combination was written down inside her closet.  The other man got Joiner's purse, keys, and a wooden chest filled with coins.  One of the men removed her watch from her arm.  They left with the safe and other items, and took Joiner's car, a 1995 Chevrolet Caprice Classic.  Joiner testified that the intruders were two black men, but she could not identify Petitioner in court except to say that he was about the same size as the intruders. The men wore masks and kept Joiner from looking at them.  ECF No. 14-1 at 199-217.

Teresa Mack testified that she met Jeffery Blandenburg the week of July 22.  On the night of the burglary, between 7:00 and 10:00 p.m.,

Blandenburg stopped by her apartment with another man named "Ant".

The men asked to borrow her car and she said no, but she agreed to give

them a ride to the North Street Trailer Park behind Trinity Baptist Church

and a Dollar General store.  Mack dropped the men off behind the Dollar

General store.  Mack identified the man called "Ant" in open court as

Petitioner.   ECF No. 14-1 at 218-27.

Trinity Cobart testified that she had been seeing Jeffery Blandenburg

for a short time.  Blandenburg introduced Cobart to "Ant".  Ant came to

Cobart's house late on the night of July 22 with another man.  Ant laid on

Cobart's floor and went to sleep.  Cobart testified that "some people" came

to the house and wanted to talk to Ant.  Cobart learned that Blandenburg

had been arrested.  Ant subsequently told Cobart that he had sprained his

ankle while running through the woods with Blandenburg.  Ant told Cobart

that he and Blandenburg were fleeing the police, and Blandenburg was

apprehended.  Ant told Cobart that he and Blandenburg had broken into a

home, stolen a car from an old lady, and crashed it into a light pole after

going to a club.  Ant told Cobart that the men broke in through the victim's

sliding glass door and they tied her up.  The next day, investigators Roland

Lipford and Bill Bryant came to Cobart's house and she identified a picture

of Petitioner.  Cobart identified Petitioner as "Ant" in open court.  ECF No. 14-1 at 230-54.

Roland Lipford, a former Marianna Police Department investigator, testified that he was called to investigate the home invasion robbery at Joiner's home.  Lipford observed the shattered glass door and the cement block on the floor.  Joiner was very upset.  A BOLO was issued for her car, which subsequently was located at the Deja Vu Club in Jacob, Florida. Lipford and Lieutenant Bryant waited down the road from the club until someone left in the car.  There was a short car chase that ended when Joiner's car struck a light pole.  The two men in the car fled the scene. Bryant chased and apprehended the passenger, Blandenburg.  Tracking dogs tracked the driver to another club.  Joiner's safe was recovered from the side of the road.  Blandenburg had Joiner's watch and a coin, and also had gloves and a mask.   ECF No. 14-1 at 254-65.

The investigators later obtained a buccal swab from Petitioner for DNA analysis, and Lipford identified Petitioner in open court.  Lipford testified that at that time approximately 4000 black males in Petitioner's age range lived in Jackson County (excluding persons in the 0-14 and 45-64 age ranges).  Lipford's numbers came from census data complied by

the University of Florida Bureau of Economics and Business Research.

On cross-examination, Petitioner's counsel suggested that the figures were

unreliable because not everyone completes a census form.  Lipford

conceded that he did not know how the underlying research was compiled

and that he did not have formal training in statistics.  ECF No. 14-1 at 265-

74.

FDLE Senior Crime Lab Analyst Charles Richards testified that he

analyzed a 1995 Chevrolet Caprice Classic at the Jackson County Sheriff's

Department.  Richards obtained latent fingerprints, collected the contents

of the ash tray, and retrieved a blue and white ski mask, a used band-aid,

and white cotton gloves.  He took vacuum sweepings from the car.

Richards identified the evidence as well as photos he had taken of the car.

ECF No. 14-1 at 274-83.

FDLE analyst Jack Remus testified without objection as an expert in

DNA analysis and comparison.  After explaining the process of DNA

analysis, Remus testified that hairs recovered from the car could not be

typed for DNA.  DNA was recovered from the ski mask.  Joiner and

Blandenburg were excluded as contributors of DNA to the ski mask, but

Petitioner was included as a possible contributor.  Remus testified that

such a DNA profile would be found in approximately one in every 6200 African-Americans.  ECF No. 14-1 at 283-303.

This concluded the State's case-in-chief.  The court denied Petitioner's motion for judgment of acquittal.  ECF No. 14-1 at 303.  After consultation with his attorney, Petitioner affirmed on the record that he did not wish to testify, and the court denied Petitioner's renewed motion for judgment of acquittal.  ECF No. 14-1 at 306.

Patterson's closing argument focused on the absence of physical evidence linking Petitioner to the crime.  Patterson also sought to undermine Cobart's credibility by pointing out some imprecisions in her testimony, such as exactly where in her apartment Petitioner was when he made the statements and who else was present.  With respect to the DNA evidence, counsel argued that there had been no evidence that Petitioner was a perfect match with the DNA sample and suggested that the State had not met its burden of showing that Petitioner was statistically a likely contributor.  Counsel pointed out that no expert on statistics had been brought in to testify about the census data.  ECF No. 14-1 at 310-14.

In rebutting the defense arguments about Cobart, the State pointed out that her testimony regarding Petitioner's confession was very specific

and detailed, and consistent with the other evidence such as where Joiner's car was found, the fact that the men crashed the car, and how the men gained entry into Joiner's home.  With respect to the DNA evidence, the State argued that the evidence supported a conclusion that the DNA from the ski hat was "very rare", and only small fraction of the county's population would match it.  The State contended that it was improbable that Blandenburg committed the crime with a person other than Petitioner who also was a likely contributor of the DNA.  ECF No. 14-1 at 319-24.

The jury found Petitioner guilty of all four charges.  ECF No. 14-2 at 18.  Petitioner was nineteen years old at the time of sentencing, and Patterson argued for a sentence that would permit Petitioner to be rehabilitated and become a productive member of society.  The State noted that Petitioner's co-defendant, Blandenburg, received consecutive life sentences for the same burglary and kidnaping charges.  The State argued for the same sentences for Petitioner.  The court sentenced Petitioner to consecutive life sentences for the burglary and kidnaping, and consecutive 15 and 5-year sentences for grand theft auto and robbery.  ECF No. 14-1 at 164-68.

On appeal, Petitioner raised two issues: (1) His grand theft and

robbery convictions violated double jeopardy; and (2) The evidence did not support his conviction of kidnaping.  ECF No. 14-2 at 27.  The First DCA affirmed in a written opinion.  ECF No. 14-2 at 84-89.  The Florida Supreme Court denied review.  ECF No. 14-2 at 110.

Petitioner moved for postconviction relief pursuant to Fla. R. Crim. P. 3.850.  ECF No. 14-2 at 130-82.  Petitioner asserted eight claims for relief: (1) Ineffective assistance of counsel in exercising peremptory strikes; (2) Denial of a fair trial because he was not included at sidebar during peremptory challenges; (3) Abuse of discretion in imposing consecutive sentences, and ineffective assistance for failing to object; (4) Violation of speedy trial rights due to ineffective assistance of counsel; (5) Sentencing error because the two life sentences exceeded the statutory maximum, counsel was ineffective for failing to object, and the sentences amount to cruel and unusual punishment; (6) Trial court error in the jury instructions on lesser-included offenses; (7) Insufficient evidence to support the kidnaping charge; and (8) Abuse of discretion in admitting census data and failing to conduct a *Frye* hearing on the DNA evidence, and ineffective assistance for failing to object.  *Id*.

The trial court summarily denied the motion with respect to grounds

three and five (consecutive life sentences), finding that Petitioner conceded in his brief that the sentences were legal, authorized by statute, and within the court's discretion.  The court rejected Petitioner's speedy-trial claim (ground four) because it should have been raised on direct appeal.  The court rejected Petitioner's jury-instruction claim because Petitioner agreed with counsel to seek the instructions, the court administered the standard instructions, and Petitioner did not raise the issue on appeal.  The court determined that Petitioner's sufficiency-of-the-evidence claim had been raised and rejected on direct appeal and was procedurally barred from postconviction review.  The court required the State to respond to Plaintiff's first, second, and eighth claims.  ECF No. 14-2 at 183-84.  The court then ordered an evidentiary hearing on one ground: whether counsel was ineffective for failing to use peremptory challenges against certain jurors, including Forrester.  ECF No. 14-2 at 244.

Following the evidentiary hearing, at which Petitioner was represented by counsel, the trial court denied Petitioner's remaining claims.  The court found that Petitioner had demonstrated no prejudice stemming from counsel's failure to strike certain jurors, that Petitioner received a fair trial, and that counsel did not render ineffective assistance.

The court determined that the trial record established that Petitioner was present at sidebar during peremptory challenges.  Lastly, the court found that counsel was not ineffective for not objecting to Lipford's testimony because Lipford merely testified as to figures he obtained during his investigation and did not offer any opinion testimony or profess to be an expert.  Because there was no scientific analysis of the data, it was unnecessary to conduct a *Frye* hearing.  ECF No. 14-2 at 328-29, 14-3 at 1.

Petitioner appealed the denial of grounds one, three, five, six, and eight of his postconviction motion.  ECF No. 14-3 at 119-20.  The First DCA affirmed, *per curiam*, without written opinion.  ECF No. 14-3 at 232.

The instant federal habeas corpus petition followed.  Petitioner asserts four grounds for relief: (1) His trial counsel was ineffective for failing to object to the testimony of Captain Lipford and Jack Remus; (2) His trial counsel was ineffective for failing to challenge Juror Oscar Forrester; (3) his consecutive life sentences violate the Eighth Amendment; and (4) his sentences should not have been consecutive because the events represented one criminal episode.  ECF No. 1.

## II. <u>Section 2254 Exhaustion Requirement</u>

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally

defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306.  A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010).  To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### III.  Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall

be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow, ___ U.S. ___,* 134 S.Ct. 10, 15 (2013)(quoting *Wood v. Allen,* 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 134 S.Ct. at 15 (standard for reviewing claims of legal error by state courts is "highly deferential").   This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Id*.   This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel

under *Strickland*[2]—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"   *Id*. at 15-16 (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011).   "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Id*. at 16 (quoting *Harrington*,

---

[2]*Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

131 S.Ct. at 786). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

## IV. Discussion

### A. *Ineffective Assistance Regarding Statistical and DNA Evidence*

Although the Petition references ineffective-assistance as his first claim, Petitioner's brief in support of his habeas petition also argues that the trial court abused its discretion in allowing Lipford to testify about population statistics and that the trial court erred in failing to conduct a *Frye* hearing with respect to the DNA evidence. Petitioner claims that Jack Remus "misled" the trial court about the general acceptance in the scientific community of the PCR (polymerase chain reaction) method of DNA testing. ECF No. 8 at 9-12.

Petitioner did not raise the admissibility of Lipford's and Remus' testimony in his direct appeal of his conviction, nor did he contend that the trial court erred in failing to conduct a *Frye* hearing. *See* ECF No. 14-2 at 27. Thus, except to the extent that Petitioner asserts an ineffective-assistance claim, these issues are unexhausted and foreclosed from

federal habeas review, absent a showing of cause and prejudice for the

procedural default.  Petitioner makes no such showing.

In rejecting Petitioner's ineffective-assistance claim in his

postconviction motion, the trial court held as follows:

> In **Ground 8**, Defendant alleges that counsel was ineffective for
> not objecting to the testimony elicited from Captain Roland
> Lipford regarding population figures for Jackson County that he
> obtained from the Bureau of Economics and Business
> Research, prepared by the University of Florida. Specifically, he
> states that Captain Lipford calculated statistics of which he was
> not an expert. However, this claim is also without merit. (*See*
> attached Trial Transcript excerpt, at pp. 82-101). Captain
> Lipford merely testified as to figures he obtained as part of his
> investigation. He did not do any calculations nor did he testify
> as to any conclusions drawn from the figures provided or offer
> any opinions as to the figures. Captain Lipford simply reported
> information he discovered and did not profess to be an expert
> in any filed regarding the numbers. Accordingly, a *Frye* hearing
> was not necessary because there was no scientific analysis as
> to these particular figures. Thus, trial counsel did the proper
> thing by attacking the reliability of the reported figures in cross-
> examination. Therefore, counsel's actions were not ineffective
> and this claim shall be denied.

ECF No. 14-2 at 328-29, 14-3 at 1.

Although Petitioner essentially restates the argument he made in the

state court, he points to nothing in the record that would support a

conclusion that the state court's determination was "so lacking in

justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt,* 134 U.S. at 15.  The record supports the state court's conclusion that Captain Lipford did not testify as an expert on statistics but rather testified only with respect to the contents of the census data he obtained during his investigation.  Petitioner's claim that Remus' testimony regarding the validity of the DNA evidence "misled" the trial court is wholly conclusional and unsupported in the record before the state court. In this court, Petitioner has offered no factual basis for an assertion that Remus' testimony about the DNA analysis and results was in any way inaccurate or misleading.  On this record, it was reasonable for counsel to focus the defense arguments on the lack of other physical evidence linking Petitioner to the crime, on questioning Cobart's credibility, and on pointing out that the DNA evidence and census data were not conclusive of Petitioner's guilt.  *See* ECF No. 14-1 at 310-14.

Further, on this record, Petitioner has failed to meet his burden of showing that he was prejudiced by counsel's performance with respect to Lipford's and Remus' testimony.  Even if counsel had succeeded in excluding the testimony (an unlikely prospect in view of the state court's

conclusions and the apparent lack of any factual basis for doing so), there is no reasonable probability that the outcome of the proceeding would have been different.  This is so because the remaining evidence—in particular Petitioner's confession to Cobart, the details of which were corroborated by other evidence—was more than sufficient for the jury to find him guilty. Therefore, Petitioner has failed to establish that this ineffective-assistance claim presents any basis for federal habeas relief.

## B.  *Ineffective Assistance Regarding Juror Forrester*

Petitioner contends that his trial counsel should have exercised a peremptory challenge as to Juror Forrester because he was biased. Petitioner argues that during *voir dire* Forrester stated that he had been a burglary victim eight times while living in Miami.  In addition, Petitioner claims that because Forrester was acquainted with Cobart in the past he could not be impartial.  ECF No. 8 at 13-15.

Petitioner's counsel, Christopher Patterson, testified at the evidentiary hearing on Petitioner's Rule 3.850 motion.  Patterson testified that all jurors were selected with the full participation and consent of Petitioner, with Patterson and Petitioner evaluating the jurors' demeanor

and responses.  ECF No. 14-2 at 299.  With respect to juror Forrester, Patterson testified that he and Petitioner took into account Forrester's statement that he had been a victim of several burglaries when he lived in the Miami area, and his statement that he could put his experiences aside in considering the case.  *Id*. at 302.  Patterson reviewed the portion of the trial transcript in which Forrester acknowledged that he knew Cobart and in which Patterson told the court that Forrester was acceptable to him and Petitioner as a juror.  Patterson did not independently recall the statements, but had no reason to believe the transcript was inaccurate.  *Id*. at 310.  Petitioner testified that he believed Patterson should have struck Forrester from the jury because Forrester stated that Cobart had helped him move and therefore he was likely to be biased.  *Id*. at 316-17.

After considering this testimony, the state court rejected Petitioner's claim.  The court determined that Petitioner had failed to meet his high burden, under state law, of showing that Forrester was actually biased.  ECF No. 14-2 at 328-29 (citing *Carratelli v. State*, 961 So.2d 312, 324 (Fla. 2007)).  The court determined that counsel had conducted the jury selection with Petitioner's participation and consent, and that Petitioner

accepted the composition of the jury prior to trial. The court therefore found that Petitioner had failed to demonstrate either deficient performance by counsel or prejudice. *Id*. at 329.

Federal courts "'evaluate juror selection claims as we would any other *Strickland* claim,' and our evaluation "starts with the strong presumption that trial counsel's performance was constitutionally adequate.'" *Fennell v. Sec'y, Dept. of Corr.*, 582 Fed. Appx. 828 (11th Cir. 2014 (quoting *Harvey v. Warden*, 629 F.3d 1228, 1239 (11th Cir. 2011)). In the post-conviction context, Florida has an actual bias requirement for claims alleging that a juror should have been excluded. *See Carratelli*, 961 So.2d at 323. "[W]here a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased." *Id*. at 324 (emphasis added). To meet the actual bias standard, "the defendant must demonstrate that the juror in question was not impartial—i.e., that the juror was biased against the defendant, and the evidence of bias must be plain on the face of the record." *Id*.

Here, Petitioner has failed to show that the state court's

determination that counsel was not ineffective was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt,* 134 U.S. at 15.  The record of the *voir dire* reflects that after Forrester offered the information about having been a burglary victim a number of years in the past, he affirmed that Petitioner was entitled to the presumption of innocence and that it was the State's burden to prove his guilt.  ECF No. 14-3 at 45, 52.  All of the jurors were asked whether the nature of the charges against Petitioner would make them uncomfortable due to personal experiences, and no jurors responded affirmatively.  *Id*. at 41.  Further, after Forrester brought it to the court's attention that he knew Cobart, he affirmed that he could remain fair and impartial while serving on the jury.  ECF No. 14-1 at 179.

As the Supreme Court has explained, the question of whether a prospective juror is biased is "largely one of demeanor," and a prospective juror's demeanor during *voir dire* may make clear what otherwise seems ambiguous on the face of a transcript.  *Patton v. Yount*, 467 U.S. 1025, 1038 & n.14 (1984).  In this case, even if Forrester's responses were ambiguous Patterson was in a position to also observe Forrester's

demeanor.  On this record, a reasonable attorney could have concluded that there was no reason to strike Forrester for cause, and therefore counsel was not ineffective for failing to strike him.  Further, as the state court found, Petitioner failed to show that Forrester was actually biased toward him.  In the absence of such actual bias, Petitioner has failed to demonstrate that he was prejudiced by counsel's decision to accept Forrester as a juror.  Therefore, Petitioner has failed to establish that this ineffective-assistance claim presents a basis for federal habeas relief.

## C. & D. *Consecutive Life Sentences*

Petitioner's third and fourth federal habeas claims both concern the consecutive life sentences imposed for burglary and kidnaping.  Petitioner argues that such sentences constitute cruel and unusual punishment under the Eighth Amendment, and that the underlying crimes constituted one criminal episode for which he should have received only one sentence. ECF No. 1 at 8-10.

Petitioner did not appeal his sentences in his direct appeal.  *See* ECF No. 14-2 at 27.  Thus, as independent claims his consecutive life sentences are procedurally defaulted and foreclosed from federal habeas

corpus review.  Even if such claims were not procedurally defaulted, claims

challenging the application of state sentencing laws are not cognizable on

federal habeas review.  *See* 28 U.S.C. § 2254(a); *Engle v. Isaac*, 456 U.S.

107, 120-21 (1982);  *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.

1989).   ("[F]ederal courts cannot review a state's alleged failure to adhere

to its own sentencing procedures.").

In his brief in support of the Petition, Petitioner also argues that his

trial counsel was ineffective for failing to object to the consecutive life

sentences.  He contends that the trial court failed to adequately consider

his age (18 at the time of the crime and 19 at the time of sentencing) and

culpability.  Petitioner cites *Graham v. Florida*, 560 U.S. 48 (2010), in

support of this claim.  In *Graham*, the Supreme Court held that the Eighth

Amendment prohibits imposition of a sentence of life without parole on a

juvenile offender who did not commit homicide.  *Graham*, 560 U.S. 48 at

74-75.  A juvenile, though, is a person below the age of 18 when the

offense is committed, as the Supreme Court made clear.  *Id*.  Petitioner

concedes that he had attained the age of 18 at the time of his offense, and

therefore *Graham* is inapplicable to him.

In summarily rejecting this claim on postconviction review, the state

court found the claim without merit because, under Florida law,

consecutive life sentences were authorized for the offenses of conviction.

ECF No. 183-84 (citing Fla. Stat. §§ 787.01 (kidnaping) and 810.02

(burglary) (1997)); *see also* Fla. Stat. § 921.16(1) (defendant convicted of

two or more offenses charged in same indictment shall serve sentences

concurrently "unless the court directs that two or more of the sentences be

served consecutively.").  Thus, even viewing the claim as one of ineffective

assistance, there was no basis for Petitioner's counsel to object to the

lawful sentences and counsel's performance cannot be deemed

ineffective.  Counsel did argue at sentencing for consideration of

Petitioner's age and potential for rehabilitation, but the state court

concluded that the consecutive life sentences were appropriate under the

facts of the case.  That sentencing decision is not subject to this Court's

oversight, and Petitioner's third and fourth claims present no basis for

federal habeas corpus relief.

## V. <u>Certificate of Appealability</u>

Section 2254 Rule 11(a) provides that "[t]he district court must issue

or deny a certificate of appealability when it enters a final order adverse to

the applicant," and if a certificate is issued "the court must state the

specific issue or issues that satisfy the showing required by 28 U.S.C. §
2253(c)(2)." A timely notice of appeal must still be filed, even if the court
issues a certificate of appealability. Rule 11(b), Rules Governing Section
2254 Cases.

The undersigned finds no substantial showing of the denial of a
constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S.
473, 483–84 (2000). Therefore, the undersigned recommends that the
district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court
may direct the parties to submit arguments on whether a certificate should
issue." Thus, if there is an objection to this recommendation by either
party, that party may bring this argument to the attention of the district
judge in the objections permitted to this report and recommendation.

## VI. <u>Conclusion</u>

For the foregoing reasons, it is respectfully **RECOMMENDED** that
the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254,  ECF
No. 1, should be **DENIED** and a COA should be **DENIED.**

**IN CHAMBERS** this 19th day of April 2018.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.